IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHERIESE KIDDIE                                                                           PLAINTIFF

v.                                        No. 3:13-CV-03030

JOHNNIE COPELAND; MERIDEE
KAISER; and ADRIAN WOODBURY, as
administrator for the estate of George Kipp
Woodbury                                                                               DEFENDANTS

**OPINION AND ORDER**

On April 4, 2017, the Court held a bench trial on this matter in Fayetteville, Arkansas. All parties were present. The bench trial was held for the purpose of determining the capacity of George Woodbury, deceased, to execute a trust in November 2010 and to amend that trust in December of 2010. Plaintiff Cheriese Kiddie alleges that George was incompetent at that time as a symptom of Alzheimer's disease or other dementia, and her complaint raises several claims for relief on this basis. All parties but Defendant Meridee Kaiser have filed updated answers to the most recent amended complaint. Because that complaint was filed for the purpose of clarifying Kiddies's claims, and because Kaiser had previously answered, the Court will consider her to have answered the amended complaint with a general denial. For the reasons set forth below, judgment will be entered for Defendants on Kiddie's declaratory judgment action.

**I.    Facts**[1]

In 1978, George and his wife, Carolyn Woodbury (Kiddie's grandmother), executed a trust, which was amended at various times prior to November 2010. Carolyn died a few years after the 1978 trust was executed, and George remarried to Leona Woodbury (Kaiser's deceased husband's

---

[1] Pursuant to Federal Rule of Civil Procedure 52(a), the Court finds the following facts to be established by a preponderance of the evidence, unless otherwise noted.

grandmother). As they aged, Leona began to exhibit symptoms of Alzheimer's. In 2007, Kiddie moved from California to live in a guest cottage on George's property.[2] With assistance from Kaiser, Kiddie provided care and assistance to George and Leona. Kiddie also sought, and apparently received, George's approval and funding to make various improvements to the property. Kiddie also assisted with farm operations. In 2009, Leona died, and George approved and funded various renovations to the guest cottage, but the contractor hired walked off the job before completion.

In August or September of 2009, George began to fall with some frequency, and began to experience issues with memory. In December 2009, George began to take Aricept,[3] but was off of it by March 2010. Medical records from March 2010 indicate that there was at least some possibility that George was suffering from dementia, though no diagnosis was made. By early 2010, he appeared to Kiddie to be having "good days and bad days" with respect to his awareness of what was occurring around him. In April 2010, George amended the 1978 trust to leave certain

---

[2] Kiddie's breach of contract action is premised on this move constituting performance of her obligations under an oral contract with George Woodbury, whereby Kiddie would move to Arkansas and take care of George and Leona Woodbury, and in exchange would receive certain property upon George's death. The Court specifically declines to make factual findings with respect to whether the parties made such an oral agreement.

[3] At the close of evidence, the Court directed the parties to submit deposition designations and briefs on whether it should take judicial notice of commonly-known effects of Alzheimer's and the prescriptive purpose of Aricept. The parties' submissions also include a substantial amount of argument and issues unrelated to this matter. The Court will direct the Clerk to docket those submissions as an exhibit to the minutes.

Ignoring the superfluous matters in the submissions, the Court now takes judicial notice of Aricept's purpose. Aricept is a drug approved by the FDA for treatment of moderate to severe dementia of the Alzheimer's type. U.S. Food & Drug Admin., Ctr. for Drug Eval. and Research, Approval Letter, Application Number: 022568, *available at* https://www.accessdata.fda.gov/drugsatfda_docs/nda/ 2010/022568Orig1s000Approv.pdf (last accessed May 3, 2017). The Court also takes judicial notice that Alzheimer's is a type of dementia which can impair the memory and mental capacity of those whom it afflicts, in some instances to the extent that those suffering from Alzheimer's may lack the necessary capacity under Arkansas law to execute wills, trusts, or other documents.

property to Kiddie.  In June 2010, George fell and was hospitalized for a period of time.  In the fall of 2010, Kiddie and George discovered that Kipp Woodbury (George's son, Kiddie's uncle, and Defendant Adrian Woodbury's[4] father) sold bank stock belonging to George.  Defendant Johnnie Copeland was then hired to revoke powers of attorney George had bestowed on Kipp.  Around the same time, Copeland raised with George the possibility of updating his 1978 trust in order to simplify it and resolve any issues stemming from George's frequent prior amendments to a trust that, by its terms, was intended to be irrevocable.  In October 2010, Kiddie hired a contractor with George's approval and funding to complete the renovation work on the guest cottage.  George understood then the scope and cost of the work to be completed.  In November 2010, Kiddie was excluded from George's house.  Also in November 2010, at First National Bank of Mountain Home, Arkansas, George executed a new trust, still leaving certain property to Kiddie.  Witnesses to the event believed he was capable of understanding what he was doing.  In December 2010, George executed an amendment to the November 2010 trust, substituting Kaiser for Kiddie.  In March 2011, an employee of the Arkansas Department of Human Services, Adult Protective Services, visited George to investigate a report of exploitation, conducted a Mini-Mental State Examination,[5] and found George to be alert and oriented.

George Woodbury died on February 18, 2012.

## II. Declaratory Judgment Analysis, Mental Incapacity

The issue before the Court in this declaratory judgment action is whether George had the mental capacity necessary to create a trust in November 2010 and to amend it in December 2010.

---

[4] Adrian Woodbury was substituted as a Defendant in his capacity as administrator for Kipp Woodbury's estate after Kipp died in September 2016.

[5] This examination is used in multiple clinical and research settings to evaluate and score the degree of a subject's cognitive impairment or dementia.

An instrument executed by a party who lacks sufficient mental capacity is void. *See Phillips v. Jones*, 179 Ark. 877, 879–80 (1929) (explaining that without mental capacity, there is no free agency, and without free agency, an act is void). The burden to prove mental incapacity by a preponderance of the evidence lies on the party challenging the instrument. *Thompson v. Orr's Estate*, 252 Ark. 377, 381 (1972).

> The law regarding mental capacity in the execution of a will is also applicable to the execution of a deed and the creation of a trust. If the maker of a deed, will, or other instrument has sufficient mental capacity to retain in his memory, without promptings, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument.

*Rose v. Dunn*, 284 Ark. 42, 46 (1984). Evidence of mental capacity or incapacity before or after the time an instrument is executed may be relevant as an indicator of mental capacity or incapacity at the time of execution. *Daley v. Boroughs*, 310 Ark. 274, 284 (1992).

Kiddie has failed to carry her burden on this issue. Every witness present when George executed the November 2010 trust or the December 2010 amendment testified that he appeared to have the capacity to execute the documents. Against this testimony, Kiddie introduced evidence that George had been prescribed the Alzheimer's drug Aricept. She pointed to medical records that raised the possibility that George was suffering from dementia at the time the documents were executed. She reiterated several times that George did not inquire about or take issue with the specific terms of the trust. All of this evidence tends to show George's mental faculties were in decline during the relevant time period. This is not enough to demonstrate incapacity, however. *See Matter of Estate of Davidson*, 310 Ark. 639, 644 (1992) ("[T]he fact that [the testatrix] was suffering ideation relative to her house and incipient dementia does not, in itself, establish an impairment of testamentary capacity.").

The test of George's mental capacity is not whether he understood or was capable of

understanding the detailed terms of the trust document.[6]  Nor is the test whether George was suffering from Alzheimer's or other dementia (whether diagnosed or undiagnosed).  The test is whether, at the time he executed the trust documents, George knew what property he had, to whom he wanted to leave it, and that the trust was the means by which he was effecting that transfer.

Based on the evidence, Kiddie cannot meet her burden to show that George was unaware of the extent of his property.  Kiddie herself admitted early in her cross examination that she believed George understood what property he had and where he wanted it to go.  She also testified that George understood what work needed to be done around the farm, and what property was in need of repairs, but that he was not capable of following the details of contracts for those repairs.  She argued that the frequency with which he changed his mind regarding distribution of his property showed incapacity, but this is not the law.  *See Matter of Estate of Davidson*, 310 Ark. 639, 644 (1992) ("So long as [a testatrix] has the capacity to make a will, she may be unfair, eccentric, injudicious, *or capricious* in making distribution." (emphasis added)).  George could change his mind as frequently as he liked, even based on a factually incorrect belief, without impugning his capacity to execute a trust.  *See Thompson v. Orr's Estate*, 252 Ark. 377, 381 (1972) ("The general rule is that a will is valid even though made by reason of a mistake of fact." (quotation omitted)).

Kiddie also cannot meet her burden to show that George was unaware of to whom he was leaving his property.  Kiddie testified on cross examination that George knew Meridee Kaiser, had a good relationship with her, and considered her to be family.  This weakens any attack on capacity

---

[6] To be sure, these sorts of documents may be too complicated for any layperson to draft or understand, or the drafting or comprehension of details may require more time and effort than a layperson wants to spend on the matter, which is why many people hire lawyers for estate planning.

that might be raised if the disposition of property had been "unnatural." *Cf. Brown v. Emerson*, 205 Ark. 735, 737–38 (1943) (explaining that when, without explanation, a testator bequeaths property to unrelated persons contrary to "the natural instinct of the heart," such circumstances may call mental capacity into question).

Finally, Kiddie cannot meet her burden to show that George did not understand that the trust he was executing was the means by which he was distributing his property. The argument Kiddie offered that most approached this issue was that the trust documents were too vague, ambiguous, and confusing for George to understand what they were intended to do. However, Copeland testified that she raised with George the issue of modernizing his trust, that she drafted the November 2010 trust and the December 2010 amendment at his direction, and that she went over each of those documents with him. Kiddie has offered no evidence sufficient to show that, despite Copeland's testimony, George did not understand that he was executing a trust through which he intended to effect a property distribution in accordance with his desires.

Although Kiddie testified that George had good days and bad days, she testified that at least into October 2010 she believed he had the mental capacity necessary to approve final renovations to the guest cottage on the farm, and Nathan Leuck, a disinterested witness, testified that in March 2011, George was alert and oriented. In light of the evidence that both before and after the November 2010 and December 2010 amendment were executed, George did not constantly exhibit symptoms of any dementia from which he might suffer, the Court will not infer that George lacked the necessary mental capacity at the time he executed those documents.

Because Kiddie did not meet her burden, the Court will enter judgment against her on her declaratory judgment action with respect to George's mental capacity to execute the November 2010 trust and December 2010 amendment.

## III. Remaining Claims and Issues

In addition to seeking a declaration that George did not have the necessary mental capacity to execute the November 2010 trust or the December 2010 amendment, Kiddie is pursuing a litany of other claims for relief. The Court will order her to show cause why Defendants should not have summary judgment on those claims for the following reasons.

Kiddie seeks a declaration that Copeland was grossly negligent with respect to her conduct in preparing the November 2010 trust and December 2010 amendment (that is, that Copeland committed legal malpractice). "The plain language of Ark. Code Ann. § 16-22-310 [the lawyer immunity statute] requires the plaintiff to have direct privity of contract with 'the person, partnership, or corporation' he or she is suing for legal malpractice. . . . [The Arkansas Supreme Court has] narrowly construed the privity requirement to require direct privity between the plaintiff and the attorney or entity to be held liable for legal malpractice." *McDonald v. Pettus*, 337 Ark. 265, 271–72 (1999). Indirect privity of heirs to a lawyer for the decedent will not suffice. *Id.* at 272. Heirs cannot sue for malpractice as third-party beneficiaries of a contract between a decedent and a lawyer. *Id.* at 273. While no privity is required to bring an action for fraud or intentional misrepresentation against an attorney, the evidence submitted during the bench trial does not support even an inference that fraud or intentional misrepresentation occurred.

Kiddie seeks a declaration voiding the November 2010 trust as an incomprehensible and misleading instrument. The Court heard ample testimony on this matter at the bench trial, and to the extent that any ambiguity in the November 2010 trust made that trust defective, the December 2010 amendments corrected the issue. Either the December 2010 amendments along with the documents executed in November 2010 in fact create the 2010 trust that Kiddie now attacks, or they provide clear and convincing evidence of the intended terms of the November 2010 trust and

7

the Court would reform the trust to give effect to those terms.  Kiddie also seeks invalidation of the December 2010 amendment on the basis of material misrepresentations and duress.  There has been no evidence submitted of duress or material misrepresentation.

Kiddie seeks a declaration that George could not transfer assets out of the 1978 trust he and Carolyn created.  Kiddie has standing to contest this transfer only to the extent that a favorable judgment could redress her injury.  Ultimately, summary judgment appears to be proper for Defendants on this issue for alternative reasons: either the assets she claims should be hers from the 1978 trust were held in a revocable trust, with George as the settlor, in which case George retained legal authority to change the terms of that trust; or the assets that she claims should be hers from the 1978 trust were held in an irrevocable trust, which means George could not amend that trust in April 2010 to give Kiddie the assets she now seeks.  Because in either case a declaration along these lines would not entitle Kiddie to any relief, judgment against her appears to be proper.

Kiddie asks the Court to adjudge that Defendants Adrian Woodbury, as successor to Kip Woodbury, and Meridee Kaiser return all assets to the trust, and that Defendant Johnnie Copeland return any fees related to her preparation of trust documents and actions as trustee.  In light of the Court's findings on the issue of capacity and in light of the fact that summary judgment appears to be proper on the remaining claims for relief, there appears to be no basis for these claims to relief.

Kiddie asks for a finding that title to a vehicle or vehicles previously owned by her and George should be held solely by her now that George is dead.  Resolution of this matter appears to directly involve a Court finding on proper distribution of property of a deceased, and as such the matter is be excepted from the Court's subject matter jurisdiction.  *Markham v. Allen*, 326 U.S. 490, 494 (1946) ("[A] federal court has no jurisdiction to probate a will *or administer an estate*." (emphasis added)).

Kiddie is also pursuing a breach of contract action premised on George's alleged contract with her. The terms of the allegedly-breached oral contract were that, if Kiddie were to move to the guest cottage on George's property and care for Leona and him for at least three years, then after that time George would convey ownership of the house and surrounding 40 acres to Kiddie. (Doc. 181, ¶ 6). Kiddie's allegations make clear that the terms of the contract were later modified to her satisfaction:

> In 2009, Leona was in the last stages of Alzheimer's disease. [George], then 89 years old and fearing for his own mental and physical health advised Plaintiff that he would fulfill his obligation for the services she was performing pursuant to their 2007 agreement by amending a trust he and Plaintiff's grandmother had formed decades earlier, to give her the main house and 40 acres upon his death. In the interim, she would continue to live in the cottage (which was in the process of substantial renovation), and operate the farm. While this did not technically fully comply with the original terms, it was acceptable to Plaintiff.

(Doc. 181, ¶ 13). By mutual assent, parties to a contract may modify its terms. *Van Camp v. Van Camp*, 333 Ark. 320, 323 (1998). Assuming George had the authority to unilaterally amend the trust he and Carolyn had executed, his promise to place his property in trust to be distributed to Kiddie upon his death—effectively a promise about the means (testate or intestate) by which his property was to be divided following his death—was required to be in writing in order to be an enforceable contract. Ark. Code Ann. § 28-24-101(b). Assuming George did not have that authority, *see* Ark. Code Ann. § 28-73-411, his promise was illusory and no valid contract could be formed. In either case, in the absence of a contract there can be no recovery for breach. Kiddie also raises a claim for intentional interference with contractual relationship against Kipp Woodbury. If no contract existed to interfere with, no tort can lie for interference.

Kiddie claims relief for violation of a state court order and improper eviction procedures. Kiddie identifies no independent action for violation of a state court order imposing a stay, and whether or not Defendants' actions constitute contempt of that order is not for this Court to say.

9

Similarly, it is not clear that the Court should exercise jurisdiction over any improper eviction action, both because the matter is before this Court on supplemental jurisdiction and the causes of action over which the Court may exercise original jurisdiction are likely to be dismissed, and because resolving the parties' rights to real property would require interference with the administration of an estate.

Kiddie will be ordered to show cause by June 6, 2017 why Defendants should not have judgment as a matter of law on the claims remaining in this lawsuit.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants should have judgment on Plaintiff's claim for declaratory relief challenging George Woodbury's capacity to execute a trust in November 2010 and December 2010.

IT IS FURTHER ORDERED that Plaintiff show cause by June 6, 2017 why Defendants should not have judgment on her remaining claims. Plaintiff may show cause by filing a brief in response to this order, as well as any necessary properly-supported statement of facts. Defendants shall have 14 days after the filing to file a reply, along with any response to a statement of facts. No additional briefing will be permitted without leave of Court.

IT IS SO ORDERED this 16th day of May, 2017.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE